**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Lisa Elowson,<br><br>        Plaintiff,<br><br>v.<br><br>Alphatec Spine Incorporated, et al.,<br><br>        Defendants. | No. CV-25-00561-PHX-DJH<br><br>**ORDER** |

Defendant Alphatec Spine Incorporated ("Defendant") filed a Motion to Dismiss Plaintiff's Complaint under Fed. R. Civ. P. 12(b)(6). (Doc. 16).[1] Thereafter, Plaintiff Lisa Elowson ("Plaintiff") filed a Response in Opposition (Doc. 22), and Defendant filed a Reply. (Doc. 23).

**I.     Background**

Defendant designs and manufactures products used in surgical procedures on the spine. (Doc. 7 at ¶ 9). Plaintiff alleges, generally, that Defendant's medical device was surgically implanted in her spine, but, due to the product's defects, her spine did not heal properly, causing her "harm, pain, and suffering." (*Id.* at ¶ 1).

After experiencing pain in her back from a slip and fall in April of 2019, Plaintiff visited her primary care physician, who ultimately referred her to Barrow Neurological Brain and Spine. (*Id.* at ¶¶ 13, 15–18). On June 12, 2019, a CT scan was performed on

---

[1] Defendant seeks dismissal of the entire Amended Complaint but only challenges two of Plaintiff's claims in the Amended Complaint. (*See generally id.*). The Motion therefore only seeks partial dismissal of the Amended Complaint.

Plaintiff's lumbar spine. (*Id.* at ¶ 19). The scan revealed a "meningioma tumor spanning from [her] L2 through L5 vertebrae[.]" (*Id.* at ¶ 20). The following month, Plaintiff underwent "a complex surgery involving multiple procedures" to remove the tumor. (*Id.* at ¶ 21).

During the surgery, "a spinal fixation procedure was performed to stabilize Plaintiff's spine." (*Id.* at ¶ 22). This procedure employed Defendant's "Arsenal Spinal Fixation System." (*Id.*) Initially, "Defendant's pedicle screws were implanted on the right side at the L2, L3, L4, and L5 levels and on the left side at the L2 and L5 levels," then the screws were connected on either side with rods. (*Id.*) Following laminectomy and facetectomy procedures, Plaintiff's tumor was excised. (*Id.* at ¶¶ 23–25).

In April 2024, Plaintiff began experiencing severe back pain in her lumbar region, and an X-ray revealed that Defendant's pedicle screw at L4 had broken prior to fusion. (*Id.* at ¶ 27). An MRI confirmed that one or more of Defendant's pedicle screws had failed. (*Id.* at ¶ 28).

As a result of the product failures, Plaintiff alleges that she continues to suffer consequences, such as permanent bodily injury, pain and suffering, and disability and impairment. (*Id.* at ¶ 39). She has now brought design defect, negligence per se, and breach of the implied warranty of merchantability claims against Defendant.

**II.    Standard of Review**

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a claim. *Cook v. Brewer*, 637 F.3d 1002, 1004 (9th Cir. 2011). Complaints must make a short and plain statement showing that the pleader is entitled to relief for its claims. Fed. R. Civ. P. 8(a)(2). This standard does not require "'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. A complaint must "state a claim to relief

that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

Dismissal of a complaint for failure to state a claim may be based on either the "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). In reviewing a motion to dismiss, courts will "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). But courts are not required "to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

### III. Discussion

Defendants argue that Plaintiff's First Amended Complaint should be dismissed because 1) Plaintiff's negligence per se claim is impliedly preempted and 2) Plaintiff's design defect claim is barred under Arizona law and inadequately pled. (Doc. 16 at 1).

**A.    Plaintiff's Negligence Per Se Claim and Implied Preemption**

Under Arizona law, "negligence per se applies when there has been a violation of a specific requirement of a law or an ordinance." *Griffith v. Valley of Sun Recovery and Adjustment Bureau, Inc.*, 613 P.2d 1283, 1285 (Ariz. Ct. App. 1980). "A person who violates a statute enacted for the protection and safety of the public is guilty of negligence per se." *Alaface v. Natl. Inv. Co.*, 892 P.2d 1375, 1385 (Ariz. Ct. App. 1994).

Plaintiff's negligence per se claim is based upon Defendant's outdated pedicle screw design. Plaintiff alleges that "[t]he Alphatec lumbar pedicle spinal screws implanted into Plaintiff contain an outdated and defective European style of design in which there is a 'sharp edge' between the thread pattern and the minor diameter of the screw shaft." (*Id.* at

¶ 54). This "sharp edge" allegedly "makes the screws prone to fractures at the joint between the thread and screw." (*Id.* at ¶ 55). Plaintiff says that "Spinal screws manufactured in the United States generally employ a smooth radius and transition between the screw thread and minor diameter to eliminate this sharp edge and provide for a smooth transition to reduce the potential for crack initiation and propagation." (*Id.* at ¶ 56). Plaintiff says her injuries were caused because Defendant maintained the outdated design in its screws. (*Id.* at ¶¶ 57, 59–60).

Plaintiff says the source of Defendant's duty to update its screw design can be found in the Federal Food, Drug, and Cosmetic Act ("FDCA") and its regulations, which impose certain obligations on manufacturers of Class II medical devices like the Alphatec screws. (Doc. 7 at ¶ 42). 21 C.F.R. § 820.1(a)(1) is a federal regulation that governs "methods used in, and the facilities and controls used for, the design, manufacture, packaging, labeling, storage, installation, and servicing of all finished devices intended for human use" and establishes "basic requirements applicable to manufacturers of finished medical devices." Plaintiff says that under these regulations, Defendant is obligated to: " 'establish and maintain procedures to control the design of the subject devices 'in order to ensure that specified design requirements are met' "; establish and maintain " 'procedures to ensure that formal documented reviews of the design results' for the subject devices 'are planned and conducted at appropriate stages of the device's design development' "; and ensure that Defendant's design history file "contain[s] or reference[s] the records necessary to demonstrate that the design was developed in accordance with the approved design plan and the requirements of' 21 C.F.R. part 820." (*Id.* at ¶¶ 47–48, 52 (citing 21 C.F.R. §§ 820.30(a), (e) and (j))).

Plaintiff claims that "[h]ad Alphatec performed its duties imposed by federal law, it would not have sold the Arsenal Spinal Fixation System without altering the screw thread design to contain a more suitable smooth radius and transition between the thread and screw." (*Id.* at ¶ 58).

In its Motion to Dismiss, Defendant argues that Plaintiff's negligence per se claim

is impliedly preempted[2] because it is entirely premised upon Defendant's alleged failure to comply with FDA regulations. (Doc. 16 at 5–6).

The Supreme Court addressed the issue of implied preemption under the FDCA in *Buckman Company v. Plaintiffs' Legal Committee*, 531 U.S. 341 (2001). There, the Court held that if establishing the defendant's liability for the plaintiff's state law claim requires demonstrating that the FDCA has been violated, then prosecution of the state law action intrudes upon the FDA's exclusive province to enforce the FDCA, rendering the suit impliedly preempted. *Id.* at 349–53. The Supreme Court, however, was clear that implied preemption is not absolute; that is, a plaintiff may rely on a violation of an FDCA requirement as a predicate for a state tort claim where the plaintiff brings a claim under "traditional state tort law which [ ] predated the federal enactments in question[.]" *Id.* at 353. By contrast, if the state law claim would not exist in the absence of the FDCA, "then the plaintiff is effectively suing for a violation of the FDCA (no matter how the plaintiff labels the claim), and the plaintiff's claim is thus impliedly preempted under *Buckman*." *Riley v. Cordis Corp.*, 625 F.Supp.2d 769, 777 (D. Minn. 2009) (citation omitted).

In other words, "[i]mplied preemption under the MDA bars claims seeking to enforce an exclusively federal requirement not grounded in traditional state tort law." *Kashani–Matts v. Medtronic, Inc.*, 2014 WL 819392, at *2 (C.D. Cal. 2014) (citing *Buckman*, 531 U.S. at 352–53). "Claims not tied to state law tort duties are essentially

---

[2] Though the Medical Device Amendments ("MDA") to the FDCA contains an express preemption provision, 21 U.S.C. § 360k(a), Defendant does not argue that Plaintiff's negligence per se claim is expressly preempted, and indeed, the facts do not support such an argument. There is no dispute that Defendant's Arsenal Spinal Fixation System underwent the more limited 510(k) review process as opposed to the more rigorous premarket approval process. As a result, it cannot be said that the FDA has "established requirements applicable to the medical device at issue" — the first condition of the test for express preemption under the statute. *See e.g.*, *Duggan v. Medtronic, Inc.*, 840 F. Supp. 2d 466, 469 (D. Mass. 2012) ("[C]laims involving a device that received premarket approval satisfy the first condition of the test for preemption while claims involving a device that received § 510(k) approval do not."). Accordingly, Plaintiff's contentions that her negligence per se claim is not preempted because the legal requirements of her claim are not "different from, or in addition to" the federal law requirements imposed on Defendant are irrelevant to the issue. (Doc. 22 at 5). Whether state law requirements are "different from, or in addition to," federal law requirements is a consideration in express preemption, not implied preemption. *See Riegel v. Medtronic, Inc.*, 552 U.S. 312, 321–22 (2008).

private actions to enforce the FDCA and are barred by Section 337(a)." *Hawkins v. Medtronic, Inc.*, 2014 WL 346622, *4 (E.D. Cal. 2014). "To avoid implied preemption, a cause of action must rely on traditional state tort law." *Id.*

Here, Plaintiff alleges that Defendant breached its duties under federal law to "review, validate, and otherwise ensure that the design of the bone screws it distributes" is reasonably safe for its intended use. (Doc. 7 at ¶ 57). Her claim relies on and cites to multiple federal regulations that impose design review obligations on Defendants. (*See id.* at ¶¶ 41–52)

The Court finds that Plaintiff's negligence per se claim, as pled, is impliedly preempted. Unlike a design defect claim based on a negligence theory, "[n]egligence per se is limited to situations involving a violation of a specific legal requirement, not a general standard of care." *Ibarra v. Gastelum*, 471 P.3d 1028, 1030 (Ariz. Ct. App. 2020); *Kapps v. Biosense Webster, Inc.*, 813 F. Supp. 2d 1128, 1152 (D. Minn. 2011) ("In a typical negligence case, the plaintiff seeks to hold the defendant liable because the defendant acted carelessly. In a negligence per se case, the plaintiff seeks to hold the defendant liable because the defendant violated a statute."). Here, Plaintiff's claim could not exist without the specific requirements set out in the MDA; indeed, she does not identify a state law or statute that otherwise provides the basis for the alleged violations. Her claim does not, therefore, exist independently under Arizona state law and is preempted. *See Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1279 (10th Cir. 2021) ("When we ask whether liability under negligence per se exists independently under state law, regardless of the FDCA or MDA, we must answer 'no.' "). Even construing the Amended Complaint in light most favorable to Plaintiff, the negligence per se claim could not exist without the MDA and, therefore, is impliedly preempted.

Other courts, addressing similar negligence per se claims, have reached the same conclusion. *See, e.g., id.* at 1280 ("Any negligence per se action premised on an MDA violation necessarily seeks to enforce the MDA rather than a parallel state-law duty."); *Ramirez v. Medtronic Inc.*, 961 F. Supp. 2d 977, 1000 (D. Ariz. 2013), *clarified on denial*

*of reconsideration* (Oct. 24, 2013) ("[A] claim for negligence that is premised solely on a manufacturer's violation of a federal standard—here the FDCA and MDA—is impliedly preempted."); *Hafer v. Medtronic, Inc.*, 99 F. Supp. 3d 844, 862 (W.D. Tenn. 2015) ("If Plaintiffs claim negligence based solely on Defendants' failure to comply with federal law or solely on illegal off-label promotion (i.e. negligence per se), Plaintiffs' claims are impliedly preempted under *Buckman*."); *see also Kapps*, 813 F. Supp. 2d at 1152 ("A negligence-per-se claim that is predicated on an alleged violation of the FDCA is, by definition, a claim that would give rise to liability under Minnesota law only because of the FDCA's enactment."). In essence, a negligence per se claim based solely on MDA violations is an attempt to enforce the MDA through a private cause of action. *C.f.* 21 U.S.C. § 337(a) ("[A]ll such proceedings for the enforcement, or to restrain violations, of this chapter shall be by and in the name of the United States."). Plaintiff's Count II, negligence per se claim, is necessarily dismissed.

### B.    Design Defect

Plaintiff alleges that Defendant's "Arsenal Spinal Fixation System and associated pedicle screws implanted in Plaintiff were in fact defectively designed, developed, engineered, and/or manufactured and were not merchantable or reasonably suited for their intended use[.]" (Doc. 7 at ¶ 37).

> Specifically, the Alphatec "Arsenal Spinal Fixation System and associated pedicle bone screws used in Plaintiff's lumbar spine failed to perform as intended and designed by breaking before fusion could occur in Plaintiff's lumbar spine. Because said failure occurred prior to the fusion healing fully, the screws were incapable of serving their intended purpose of providing the necessary stability to the vertebral column during this critical period of recovery.

(*Id.* at ¶ 38). Plaintiff also alleges that these defects existed at the time it left Defendant's control and were the direct and proximate cause of her injuries. (*Id.* at ¶¶ 36, 39).

Defendant argues that Plaintiff's strict liability design defect claim is barred under Arizona law and is inadequately pled. (Doc. 16 at 6–8).

### 1.    Whether Arizona Law Bars Plaintiff's Design Defect Claim

As to its first contention, Defendant states that "Arizona follows either the Restatement (Second) or (Third) of Torts, and [] both of these reject strict liability design defect claims involving medical devices." (Doc. 23 at 8 (emphasis omitted)).

To the extent Arizona follows the Second Restatement, Defendant argues that it prohibits design defect claims "for those important products that are 'incapable of being made safe for [its] intended and ordinary use.'" (Doc. 16 at 7 (citing Restatement (Second), § 402A cmt. k)). The Court agrees with Plaintiff that whether the Arsenal device is incapable of being safe for its intended and original use is a factual issue that cannot be resolved on a motion to dismiss. *Whitewater West Industries, Ltd. v. Pacific Surf Designs, Inc.*, 2017 WL 4518526, *3 (S.D. Cal. 2017) ("Defendants' arguments require the Court to weigh evidence and draw inferences against the non-moving party. That is improper on a motion to dismiss."). This argument is, therefore, rejected.

The Court also rejects Defendant's contention that § 6c of the Third Restatement applies to Plaintiff's strict liability design claim, rendering it deficiently pled. Section 6(c) provides that

> [a] prescription drug or medical device is not reasonably safe due to defective design if the foreseeable risks of harm posed by the drug or medical device are sufficiently great in relation to its foreseeable therapeutic benefits that reasonable health-care providers, knowing of such foreseeable risks and therapeutic benefits, would not prescribe the drug or medical device for any class of patients.

Restatement (Third) of Torts: Products Liability § 6(c) (1998). Defendant's position is that under Restatement § 6c, which articulates a risk/benefit assessment for a juror, Plaintiff has not and cannot plausibly plead that a provider would not prescribe the Arsenal device for *any* class of patients. Section 6c, however, is not consistent with the standard articulated in *Dart v. Wiebe Mg., Inc.*, 709 P.2d 876, 880–81 (Ariz. 1985), the applicable standard for a strict liability design defect claim in Arizona.

> In *Dart*, the Arizona Supreme Court explained that "there is a fundamental difference in the application of a risk/benefit analysis in a negligent design case and the same analysis in a strict liability design case. The difference is significant, for it shifts the central focus of the inquiry from the *conduct* of

the manufacturer (negligence) to *the quality of the product* (strict liability)." *Id.* at 880 (emphasis in original). The court elaborated that "[t]he true distinction. . . between negligent design cases applying the risk/benefit analysis and strict liability cases applying the same word formulation is the time frame in which this determination is made." *Id.* In negligence cases, the reasonableness of the manufacturer's conduct is assessed "at the time of manufacture or design of the product." *Id.* at 880-81 (noting that "[t]his test is 'nothing more than the familiar negligence standard' "). In strict liability cases, however, the product is the focus of the inquiry, and "[t]he quality of the product may be measured not only by the information available to the manufacturer at the time of design, but also by the information available to the trier of fact at the time of trial." *Id.* at 880-81. The court noted that "[t]his 'hindsight' test is generally recommended by the commentators, and by precedent, if the case is to be pursued in strict liability." *Id.* at 881 (citations omitted).

*McBroom v. Ethicon, Inc.*, No. CV-20-02127-PHX-DGC, 2022 WL 675813, *2 (D. Ariz. Mar. 6, 2022). As the court in *McBroom* noted, *Dart* remains good law in Arizona. Applying Restatement § 6(c) to Plaintiff's strict liability design defect claim would be a departure from Arizona law in light of the distinctions between strict liability design defect claims and negligent design claims noted by the *Dart* court. The Court therefore declines to apply § 6(c) in assessing the sufficiency of Plaintiff's claim.

Contrary to Defendant's assertion, neither Restatement acts as an outright prohibition on Plaintiff's strict liability design defect claim. The Court will proceed to determine if a strict products liability design defect claim has been properly alleged.

**2.   Sufficiency of Plaintiff's Design Defect Claim**

To establish a strict products liability claim under Arizona law, a plaintiff must demonstrate that 1) the product is defective and unreasonably dangerous, 2) the dangerous condition existed at the time it left defendant's control, and 3) the defective condition is the proximate cause of the plaintiff's injuries and property loss. *Dietz v. Waller*, 685 P.2d 744 (Ariz. 1984) (citation omitted). Defendant summarily argues the claim is deficient because it "does not allege any specific defect in the design" or "how such design caused Plaintiff's injury." (Doc. 16 at 8). But to find the Amended Complaint deficient in this regard would ignore allegations of the Amended Complaint. (*See e.g.*, Doc. 7 ¶¶ 38, 54–

56); *Securities and Exch. Comm'n v. Timetrust, Inc.*, 28 F. Supp. 34, 44 (N.D. Cal. 1939) ("Courts should deal with the substance, and not the form of the language of the pleadings.").

Plaintiff describes the design defect as follows: "The Alphatec lumbar pedicle spinal screws implanted into Plaintiff contain an outdated and defective European style of design in which there is a 'sharp edge' between the thread pattern and the minor diameter of the screw shaft." (Doc. 7 at ¶ 54). "The 'sharp edge' makes the screws prone to fractures at the joint between the thread and screw," whereas "a smooth radius and transition between the screw thread and minor diameter…provide for a smooth transition to reduce the potential for crack initiation and propagation." (*Id.* at ¶¶ 55–56). The defective design resulted in the screw "breaking before fusion could occur in Plaintiff's lumbar spine." (*Id.* at ¶ 38). She then says Defendant's failure to design screws that remain intact and do not break caused her injuries, including "debilitating pain as a result of (a) the breakage itself; (b) a recommendation to undergo a second spinal surgery to (i) remove and (ii) replace the Alphatec screws and (iii) implant titanium interbody devices between Plaintiff's vertebrae; (c) the inability to fully remove a broken Alphatec screw from her vertebrae; and (d) having to undergo a second recovery period following the second spinal surgery." (*Id.* at ¶ 39).

Plaintiff has sufficiently alleged a design defect claim capable of withstanding a 12(b)(6) challenge.

Accordingly,

**IT IS ORDERED** that Defendant's Motion to Dismiss (Doc. 16) is **GRANTED IN PART AND DENIED IN PART**. Plaintiff's Count II Negligence Per Se claim is impliedly preempted and therefore dismissed.

Dated this 26th day of January, 2026.

Honorable Diane J. Humetewa
United States District Judge